**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

**CASE NO. 26-CV-01526**

**PIKE OFF, OTA, INC.,**

Plaintiff,

v.

**OKLAHOMA TURNPIKE AUTHORITY, ET AL.,**

Defendant,

# PLAINTIFF'S AMENDED MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION, REQUEST FOR HEARING, AND BRIEF IN SUPPORT

ROBERT E. NORMAN, OBA #14789
CHEEK & FALCONE, PLLC
6301 Waterford Blvd., Suite 320
Oklahoma City, OK 73118
Telephone: (405) 286-9191
Facsimile: (405) 286-9670
rnorman@cheekfalcone.com

-and-

FREDERICK W. ADDISON, III
ZACHARY A. FORD
CONOR P. WHITE
Munsch Hardt Kopf & Harr, P.C.
500 N. Akard St. Ste 4000
Dallas, TX 75201
Telephone: (214) 855-7500
Facsimile: (214) 855-7584
raddision@munsch.com
zford@munsch.com
cwhite@munsch.com
*Attorneys for Defendant*

October 30, 2026

## TABLE OF CONTENTS

**INTRODUCTION AND BACKGROUND** ..... 1

A. THE PROJECT ..... 1

B. MAJOR FEDERAL ACTION ..... 3

C. THE AFFECTED ENVIRONMENT AND PLAINTIFF'S INTERESTS ..... 5

**PLAINTIFF'S ENTITLEMENT TO INJUNCTIVE RELIEF** ..... 7

**STANDARD OF REVIEW – STANDARD FOR INJUNCTIVE RELIEF** ..... 7

**I. PIKE OFF IS SUBSTANTIALLY LIKELY TO SUCCEED ON THE MERITS OF ITS CLAIM** ..... 9

A. Clean Water Act Violations. ..... 9

B. Administrative Procedure Act Violations. ..... 12

C. National Environmental Policy Act Violations. ..... 13

D. Endangered Species Act – Section 7 Consultation Violations. ..... 15

E. Section 4(f) of the Federal Transportation Act. ..... 17

**II. PIKE OFF IS AT SERIOUS AND IMMEDIATE RISK OF IRREPARABLE HARM** ..... 18

**III. PIKE OFF PREVAILS ON A BALANCING OF HARMS ANALYSIS** ..... 19

**IV. THE REQUESTED RELIEF WILL SERVE THE PUBLIC INTEREST** ..... 21

**REQUEST FOR HEARING** ..... 22

**PRAYER FOR RELIEF** ..... 22

## TABLE OF AUTHORTIES

### Cases

*Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 545 (1987) ................................ 19
*Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 415–16 (1971) ..................... 13
*Davis v. Mineta*, 302 F.3d 1104, 1115–16 (10th Cir. 2002) ..................................... 19, 22
*Diné Citizens Against Ruining Our Env't v. Haaland*, 59 F.4th 1016 (10th Cir. 2023) ... 22
*Diné Citizens Against Ruining Our Env't v. Jewell*, 839 F.3d 1276, 1281–82 (10th Cir. 2016) ........................................................................................................................ 8
*Forest Guardians v. Johanns*, 450 F.3d 455, 465 (10th Cir. 2006) ................................ 19
*Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1188–89 (10th Cir. 2003) ........................ 7
*Motor Vehicles Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 42 (1983) .. 12
*Porter v. Warner Holding Co.*, 328 U.S. 395, 398 (1946) .................................................. 8
*Riverside Irr. Dist. v. Andrews*, 758 F.2d 508, 514 (10th Cir. 1985) ............................... 10
*Rocky Mountain Peace & Justice Center v. United States Fish and Wildlife Service*, 40 F.4th 1133, 1156 (10th Cir. 2022) ........................................................................... 11
*Ross v. Federal Highway Administration*, 162 F.3d 1046 (10th Cir. 1998) ....................... 3
*See O Centro Espírita Beneficente União do Vegetal v. Ashcroft*, 389 F.3d 973, 975–76 (10th Cir. 2004) (en banc), *aff'd*, 546 U.S. 418 (2006) .................................................. 8
*Sierra Club, Inc. v. Bostick*, 787 F.3d 1043, 1064 (10th Cir. 2015) .................................. 4
*State of Kan. Ex rel. Stephan v. Adams*, 705 F.2d 1267, 1269 (10th Cir. 1983) .............. 22
*Village of Los Ranchos de Albuquerque v. Barnhart*, 906 F.2d 1477, 1480 (10th Cir. 1990) ........................................................................................................................ 3
*Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) ....................................... 7

### Statutes

13 U.S.C. § 1362(16) ........................................................................................ 10
16 U.S.C. § 1536(a)(2) ...................................................................................... 15
23 C.F.R. § 771.115 .......................................................................................... 13
23 U.S.C. § 138 ................................................................................................ 17
28 U.S.C. § 1361 ................................................................................................ 7
28 U.S.C. § 1651 ................................................................................................ 8
28 U.S.C. § 2202 .............................................................................................. 23
33 C.F.R. § 333.18(c)(2) ..................................................................................... 4
33 U.S.C. § 1251(a) ............................................................................................ 9
33 U.S.C. § 1251(a). ........................................................................................... 9
33 U.S.C. § 1311(a) ............................................................................................ 9
33 U.S.C. § 1344(a), (e) .................................................................................... 10
33 U.S.C. § 1362(12)(A) ..................................................................................... 9
33 U.S.C. § 1362(5) ............................................................................................ 9
33 U.S.C. § 1362(6) ............................................................................................ 9
33 U.S.C. § 1362(7) .......................................................................................... 10
33 U.S.C. §§ 1251–1387 ..................................................................................... 4

33 U.S.C. §§ 1311, 1344 .......... 9
40 C.F.R. 230.05 .......... 8
40 C.F.R. 230.10(a) .......... 8
49 U.S.C. § 303 .......... 17
5 U.S.C. § 706(2)(A), (D) .......... 12
5 U.S.C. §§ 701–706 .......... 7
50 C.F.R. § 402.14 .......... 16

**Rules**

Fed. R. Civ. P. 10(c) .......... 1
Federal Rule of Civil Procedure 65 .......... 8

Plaintiff Pike Off OTA, Inc. ("Pike Off") files this Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction as set forth herein and in Plaintiff's Complaint and supporting materials,[1] and would respectfully show the Court as follows:

## INTRODUCTION AND BACKGROUND

### A. THE PROJECT

Defendant Oklahoma Turnpike Authority ("OTA") is constructing a new controlled access, high speed turnpike connecting Interstate 44, Interstate 35, and Interstate 40 in McClain and Cleveland Counties, Oklahoma, known as the East-West Connector Turnpike Project (the "Project" or "EWC")[2]. The EWC includes junctions at Interstate 44, Western Avenue/60th Avenue NW, Interstate 35, South Broadway, South Sooner Road/SH-77H, South Douglas/48th Street, the proposed South Extension Turnpike, South Choctaw Road, South Peebly Road, and Interstate 40. The Project proposes the construction of approximately 30.5 miles of turnpike with two bridges spanning the Canadian River, and other construction activities that will include the discharge and fill of materials into federally protected jurisdictions and waterways.

According to OTA's Chief of Public Relations, Lisa Shearer Salim, in a statement made on December 11, 2025, the Project includes the "longest bridge in Oklahoma," with

[1] Plaintiff incorporates fully by reference its First Amended Complaint for Declaratory Judgment, Temporary Restraining Order, and Other Injunctive Relief & Request for Hearing ("Plaintiff's Complaint"), including all Exhibits, pursuant to Fed. R. Civ. P. 10(c).

[2] OTA's Main Project Map is attached hereto as Exhibit 1. *See also* Exhibit 2, partial route map showing EWC Project impacting/crossing Lake Thunderbird federal flowage easements, referenced and discussed at length *infra*, p. 18.

the first phase of construction on the $97 million bridge set to begin in 2026. See Pike Off's Notice of Intent to Sue, p. 2, attached as Exhibit 1 to Complaint. True to their word, at least in this respect, construction has begun on the Project, and already the negative impacts—which OTA has continually disregarded or downplayed, and the federal agencies have ignored—have demonstrated themselves as a result of OTA's actions. No meaningful consultation under Section 7 of the Endangered Species Act has occurred.

The Canadian River is home to several species of endangered or threatened species recognized by the United States Fish and Wildlife Service ("FWS"), namely the: Monarch Butterfly, Arkansas River Shiner, Peppered Chub, Piping Plover, Red Knot, and the Whooping Crane. Intertwined with the Project is a pernicious and pervasive disregard for the regulations and framework intended to protect the natural environment of the United States.

Not only is the continued risk of greater harm imminent, but harm has also already occurred and will likely continue. The Project has already materially altered protected waterways in the form of fill and discharge and the rerouting of waterways due to the construction of access roads. The building of piers and placement of equipment in Wetlands and inside the Ordinary High Water Mark ("OHWM") of the Canadian River, threatening and/or harming the habitats of protected and endangered species is imminent, if it has not occurred already. With much more work to be done, if the Project is allowed to continue, these harms will increase substantially as additional discharges, impacts to species, noise pollution, permanent fixtures, and other associated risk factors become permanent and irreversible.

**B. MAJOR FEDERAL ACTION**

The Tenth Circuit has defined "major federal action" as "actions by the federal government . . . and non-federal actions 'with affects that might be major and which are potentially subject to federal control and responsibility.'" *Village of Los Ranchos de Albuquerque v. Barnhart*, 906 F.2d 1477, 1480 (10th Cir. 1990). The Tenth Circuit has repeatedly held that "[i]n effect, 'major federal action' means that the federal government has 'actual power' to control the Project." *See Ross v. Federal Highway Administration*, 162 F.3d 1046 (10th Cir. 1998).

The Project constitutes major federal action on at least two independent grounds.[3]

As set forth more fully herein, the OTA failed to perform, and FHWA and USACE failed to acquire, an EIS and Section 4(f) study, and an Individual Permit under the Clean Water Act, respectively.

First, an Individual Permit is required under the Clean Water Act because a proper analysis—one that, *inter alia*, accounts for connected actions and avoids improper segmentation—results in impacts to Waters of the United States ("WOTUS") greater than

---

[3]On its ACCESS Oklahoma in its frequently Asked Questions Section, in replying to the Question "Has OTA completed any Environmental Studies yet?" It reads:

> "OTA will complete studies on all ACCESS Oklahoma corridors in accordance to State and Federal regulations. These studies will include bodies of waters and wetlands, threatened and endangered species, and cultural resources (historic and archaeological). For project areas that intersect federal highways, compliance with the National Environmental Policy Act ("NEPA") will be required, which may necessitate additional studies. Both the Oklahoma Department of Transportation and the Federal Highway Administration will need to approve any NEPA document."

*See* Exhibit 3.

one-half (½) acre. The United States Army Corps of Engineers ("USACE") National Environmental Policy Act ("NEPA") responsibilities are triggered for any action constituting a major federal action, including the issuance of an individual permit. *See Sierra Club, Inc. v. Bostick*, 787 F.3d 1043, 1064 (10th Cir. 2015).

Second, OTA admits on its website and in its filings that the Project areas that intersect with federal highways must comply with NEPA. OTA has admitted the Project must be approved by the Federal Highway Administration ("FHWA") and the Oklahoma Department of Transportation ("ODOT") in order for OTA to commence and complete construction of the Project. Without FHWA's approval of the NEPA, and other, analyses at the federal level, the Project cannot be completed. Thus, FHWA exerts control over the Project sufficient to establish "actual power to control" the Project, classifying it as a major federal action.

Additionally, USACE's own required actions in regulating and approving the Project by issuing permits under Section 404 of the Clean Water Act, 33 U.S.C. §§ 1251–1387, constitute major federal action within the meaning of the USACE's NEPA regulations. *See* 33 C.F.R. § 333.18(c)(2).

Despite the mandatory statutory and regulatory predicates that must be satisfied before the expenditure of federal funds, and before construction of a major federal action may proceed, OTA has commenced and is continuing construction of the Project without submitting to the mandatory analyses required under NEPA, the Clean Water Act ("CWA"), the Federal Transportation Act, and the Endangered Species Act ("ESA").

## C. THE AFFECTED ENVIRONMENT AND PLAINTIFF'S INTERESTS

The Canadian River within the Project impact area constitutes habitat for the Arkansas River Shiner. Lake Thunderbird and Lake Thunderbird State Park are part of the Norman Project and provide recreation and wildlife benefits, attract tourism and abundant wildlife, and offer various water-based and land-based recreational activities including boating, swimming, fishing, camping, hunting, hiking, picnicking, horseback riding, mountain biking, and birding. *See* Tanner Naeher Affidavit, attached as Exhibit 2 to Complaint; Amy Cerato Affidavit, attached as Exhibit 3 to Complaint.

Moreover, Lake Thunderbird is also a Water of the United States and vital drinking water supply constructed by the Norman Project, impounding the Little River, which provides clean municipal drinking water for the cities of Norman, Del City, and Midwest City.

The Little River and Hog Creek run into Lake Thunderbird. The Canadian River and Lost Creek are in the area where OTA is building the longest bridge in Oklahoma for the Project. The longest bridge in Oklahoma will cross the Canadian River. The Project's impacts on these interconnected waterways and the surrounding watershed directly threaten the environmental and recreational qualities of Lake Thunderbird and the surrounding areas.

Based on OTA's own, inadequate, Delineation of Waters of the United States Report dated December 10, 2024, no less than 3.86 acres of Waters of the United States—

including streams, creeks, and wetlands—fall within the study footprint and will be impacted by the Project.[4]

Pike Off is an Oklahoma not-for-profit corporation whose mission includes ensuring compliance with federal environmental laws and regulations in connection with OTA's construction of the East-West Connector Turnpike Project. Pike Off brings this action on behalf of itself and its members, including Amy Cerato and Tanner Naeher, whose procedural, recreational, aesthetic, and environmental interests are adversely affected by the Project, and the failure of Defendants to comply with applicable federal environmental laws.

Amy Cerato is the President and a Board Member of Pike Off. She is a frequent and regular user of Lake Thunderbird and the Canadian River area. She personally participates in mountain biking and other outdoor recreational activities in the Lake Thunderbird area. The Project's impacts on the interconnected waterways and the surrounding watershed directly threaten the environmental and recreational qualities she uses and enjoys. *See* Affidavit of Amy Cerato ("Cerato Aff."), attached to Plaintiff's Complaint as Exhibit 3.

Tanner Naeher is a member and board member of Pike Off. He has grown up hunting, fishing, and enjoying Lake Thunderbird since high school. He regularly—averaging approximately twice per week—hunts deer, turkey, and wild hogs, fishes, engages in wildlife photography, other recreation, and observes wildlife in and around the

---

[4] A true and correct copy of the OTA's and ACCESS Oklahoma's *Waters of the U.S. Delineation Report* dated December 10, 2024 is attached hereto as Exhibit 4.

South Canadian River and Lost Creek. See Affidavit of Tanner Naeher ("Naeher Aff."), attached to Plaintiff's Complaint as Exhibit 2. As set forth in the Naeher Aff., he has observed other persons using Lake Thunderbird and the Canadian River for recreational and other purposes.

## PLAINTIFF'S ENTITLEMENT TO INJUNCTIVE RELIEF

### STANDARD OF REVIEW – STANDARD FOR INJUNCTIVE RELIEF

Pike Off seeks to enjoin further activity on the Project, including all construction, until such time as the OTA, USACE, the FHWA, the Bureau of Reclamation (the "Bureau"), and the FWS comply with their obligations under the CWA, Administrative Procedure Act ("APA"), the USACE's NEPA regulations, the ESA, and the Federal Transportation Act ("FTA").

Issuance of a preliminary injunction as sought by Pike Off, is appropriate here because, pursuant to Federal Rule of Civil Procedure 65, Pike Off: (1) is substantially likely to succeed on the merits; (2) faces serious and immediate risk of irreparable harm; (3) prevails on a balance of harms analysis; and (4) the requested relief will serve rather than disserve the public interest. *See Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1188–89 (10th Cir. 2003).

The Federal Defendants' improper and erroneous actions and inactions are expressly made actionable through the APA, 5 U.S.C. §§ 701–706, or in the alternative, the Mandamus and Venue Act, 28 U.S.C. § 1361. OTA's actions in constructing the Project are additionally redressable through this Court's powers to preserve its jurisdiction as

codified in the All Writs Act (28 U.S.C. § 1651), or this Court's inherent powers. *See Porter v. Warner Holding Co.*, 328 U.S. 395, 398 (1946).

In the Tenth Circuit, courts apply two alternative preliminary injunction standards. In circumstances where a movant seeks a disfavored injunction—one that would alter the status quo—the movant must make a heightened showing that the four traditional factors "tip strongly" in its favor. *See O Centro Espírita Beneficente União do Vegetal v. Ashcroft*, 389 F.3d 973, 975–76 (10th Cir. 2004) (en banc), *aff'd*, 546 U.S. 418 (2006). However, where the movant seeks to preserve the status quo and prevent irreversible environmental harm, the traditional four-factor test applies. *See Diné Citizens Against Ruining Our Env't v. Jewell*, 839 F.3d 1276, 1281–82 (10th Cir. 2016). Under either standard, Pike Off satisfies its burden.

Because an Individual Permit under the CWA is required, OTA must demonstrate there is no practicable alternative that causes less impact than OTA's preferred alternative. This analysis is referred to as determining the Least Environmentally Damaging Practicable Alternative ("LEDPA"), and is governed by Sections 40 C.F.R. 230.05 and 40 C.F.R. 230.10(a). The failure by OTA to perform such analysis, and the abdication by USACE of its responsibilities to require it, violate the Clean Water Act. Any and all construction of OTA's preferred alternative should be enjoined until it has performed the LEDPA Alternatives Analysis.

## I. PIKE OFF IS SUBSTANTIALLY LIKELY TO SUCCEED ON THE MERITS OF ITS CLAIM

### A. <u>Clean Water Act Violations</u>.

The Clean Water Act was enacted by Congress in 1972 to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). Section 404 of the CWA prohibits the discharge of any pollutant, including dredged soil or other fill material, into navigable waters unless authorized by permit. 33 U.S.C. §§ 1311, 1344.

The objective of the CWA is "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). To achieve the objective of the CWA, Section 301(a), 33 U.S.C. § 1311(a), prohibits the "discharge of any pollutant by any person," except as otherwise authorized by the CWA.

A "person" means "an individual, corporation, partnership, association, State, municipality, commission, or political subdivision of a State, or any interstate body." 33 U.S.C. § 1362(5).

The meaning of "pollutant" includes "dredged spoil, solid waste, incinerator residue, sewage, garbage, sewage sludge, munitions, chemical wastes, biological materials, radioactive materials, heat, wrecked or discarded equipment, rock, sand, cellar dirt and industrial, municipal, and agricultural waste discharged into water." 33 U.S.C. § 1362(6). The meaning of "discharge of a pollutant" for purposes of Section 301(a) of the CWA, 33 U.S.C. § 1311(a), includes "any addition of any pollutant to navigable waters from any point source." 33 U.S.C. § 1362(12)(A). The term "discharge" when used without

qualification means "discharge of a pollutant" and "a discharge of pollutants." 13 U.S.C. § 1362(16).

"Navigable waters" means "waters of the United States, including the territorial seas." 33 U.S.C. § 1362(7). In turn, "waters of the United States" means, *inter alia*, traditionally navigable waters and waters that are relatively permanent, standing, or continuously flowing bodies of water that are connected to traditionally navigable waters.

USACE either issues a permit under Section 404 (an "individual permit") or a Nation Wide Permit ("NWP"), here, NWP 14 (Linear Transportation Projects). 33 U.S.C. § 1344(a), (e). Pursuant to NWP-14, for a linear transport project "in non-tidal waters, the discharge of dredged or fill material cannot cause the loss of greater than ½-acre of waters of the United States."

A party "is entitled to proceed under a nationwide permit only if they can show that they meet the conditions for such a permit." *Riverside Irr. Dist. v. Andrews*, 758 F.2d 508, 514 (10th Cir. 1985).

OTA improperly segmented the Project to manufacture its impacts as below the limits permitted under NWP-14. OTA's delineation describes a 30.5-mile project divided into two separate phases, each consisting of five (5) separate segments—resulting in ten (10) segments total. Under NEPA, an agency must consider "connected actions, cumulative actions, and similar actions in the same impact statement." This regulation "prevents agencies from minimizing the potential environmental consequences of a proposed action (and thus short-circuiting NEPA review) by segmenting or isolating an individual action that, by itself, may not have a significant environmental impact." *Rocky Mountain Peace*

*& Justice Center v. United States Fish and Wildlife Service*, 40 F.4th 1133, 1156 (10th Cir. 2022).

Taken together, the Project, as a whole, requires the construction of temporary and permanent access roads to facilitate the construction of 30.5 miles of linear highway, crossing the Canadian River and impacting Lost Creek. By OTA's own delineation report, the Project's footprint includes WOTUS totaling at least 3.1 acres of streams, an additional 1.2 acres of Wetland, and another 6 acres of Pond. Because the impacts to WOTUS total more than one-half (½) acre, once impacts are properly determined with connected actions considered and without segmentation, NWP-14 is not available to OTA, and OTA must obtain an Individual Permit.

USACE has relied too heavily on the vague and inadequate representations made by OTA and abdicated its own responsibilities to use the best science available to make factual determinations under Section 404. In particular, OTA failed to determine, and USACE failed to require a proper Ordinary High Water Mark ("OHWM") to establish the limits of construction outside WOTUS. OTA's field visit for the delineation and determination of the OHWM occurred in August and September of 2022—making any determination stale and unreliable - given the PCNs were submitted over two years later in December 2024 and August 2025. In addition, OTA's putative determination of the OHWM did not use the "National Ordinary High Water Mark Field Delineation needed for Rivers and Streams," (2025) or any other accepted protocol or procedure to establish the

OHWM for the Canadian River or Lost Creek.[5] Oklahoma Turnpike Routes Authorized in State Statute Title 69-1705. Despite indicating no impacts to the Canadian River would occur, OTA has either authorized, or continues to allow contractors working on its behalf, to place heavy equipment, piers, bollards, and other construction equipment within the OHWM, floodplains, and Wetlands of the Canadian River.

It is significantly likely Pike Off will succeed on the merits of its CWA claims because USACE's approval of OTA's use of NWP-14 was arbitrary, capricious, and not in accordance with law.

**B. <u>Administrative Procedure Act Violations.</u>**

The APA provides for judicial review of any improperly taken agency actions. A reviewing court shall "hold unlawful and set aside" any agency actions found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law" or "without observance of procedure required by law." 5 U.S.C. § 706(2)(A), (D).

An agency action is arbitrary and capricious if the agency has "entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicles Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 42 (1983). A reviewing court must undertake a "thorough, probing, in-depth review" of the agency's decision and then decide whether it was based on a consideration of the relevant factors and whether there has been

a clear error of judgment. *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 415–16 (1971).

USACE's verification and approval of OTA's use of NWP-14 for the Project, and the failure to require an individual permit, were arbitrary, capricious, and not in accordance with law for the following reasons: (a) USACE failed to make independent factual determinations as required under Section 404, and instead relied exclusively on unsupported representations by OTA; (b) USACE accepted OTA's stale and unreliable OHWM determination based on mere observation of the Canadian River during field visits from August and September 2022; (c) USACE failed to require OTA to identify clearly the actual acres impacted by the Project, or to explain the unsubstantiated variation in the delineation report from the study footprint; (d) USACE then relied upon the unsubstantiated Information in making the decision not to require an individual permit and an Environmental Impact Statement ("EIS"); (e) USACE failed to address the segmentation and connected actions of impacts across multiple components of a single Project; (f) USACE failed to address the connected actions of impacts across multiple components of a single Project; and (g) USACE failed to require an Individual Permit despite impacts exceeding the one-half acre threshold of NWP-14.

It is substantially likely Pike Off will succeed on the merits of these APA claims.

**C. <u>National Environmental Policy Act Violations</u>.**

The Project constitutes a major federal action requiring compliance with NEPA, including the preparation of an EIS. FHWA's regulations at 23 C.F.R. § 771.115 state that

actions normally requiring an EIS include "[a] new controlled access freeway" and "[a] highway project of four or more lanes on a new location."

The Project is indisputably a controlled-access highway with four or more lanes; it is a turnpike designed for high-speed vehicular traffic, with all traffic flow—ingress and egress—regulated. The Intensive Cultural Resources Survey describes the EWC as "a new 4-lane controlled-access freeway that will provide additional capacity to the transportation network in the Oklahoma City metropolitan area."[6] The RRS Request and Project Information submitted by OTA describes the EWC as "a 4-lane limited access freeway with grade separated crossing of local roads and interchanges for access."[7]

Despite this straightforward analysis and the inevitable conclusion that results, OTA has failed to conduct an EIS. OTA has admitted the Project is subject to FHWA's oversight and approval, the Project is a new controlled access freeway, and it is a highway project of four or more lanes on a new location. In this regard, ACCESS Oklahoma, FAQ specifically states:

> "For project areas that intersect Federal Highways, compliance with the National Environmental Policy Act ("NEPA") will be required, which may necessitate additional studies" [such as the 4-F and EIS requirements].

*See* Exh. 3. The Project cannot continue unless and until OTA prepares a proper EIS.

---

[6] A true and correct copy of the *Intensive Cultural Resources Survey of the Oklahoma Turnpike Authority ACCESS East-West Connector Section 28002* dated July 2025 is attached hereto as Exhibit 5. See pp, i, 1 for OTA description of EWC Project.

[7] A true and correct copy of the RRS Request & Project Information page is attached hereto as Exhibit 6. See p. 1, Project Description.

It is substantially likely Pike Off will succeed on the merits of its NEPA claims. OTA's failure to prepare an EIS, and FHWA's failure to require one, are actions that are arbitrary, capricious, and not in accordance with law.

**D. <u>Endangered Species Act – Section 7 Consultation Violations</u>.**

Section 7(a)(2) of the ESA requires federal agencies to ensure their activities are "not likely to jeopardize the continued existence of any federally listed species or the destruction or adverse modification of habitat of such species . . . determined . . . to be critical…." 16 U.S.C. § 1536(a)(2), "ESA Section 7 Consultation," U.S. Fish and Wildlife Service, attached to the Complaint as Exhibit 8 "Consultation Guidance." An agency must initiate formal consultation for any activity that "may affect" listed species and critical habitat.

The Arkansas River Shiner (*Notropis girardi*)[8] is a federally listed threatened species. The Canadian River within the Project impact area constitutes critical habitat for the Arkansas River Shiner.[9] The Project involves major construction directly in and adjacent to the Canadian River and its tributaries—known habitat for the Arkansas River Shiner. Bridge construction, placement of piers, construction of work roads across Lost Creek, discharge of fill material, and associated mobilization activities all have the potential to adversely affect the Arkansas River Shiner through direct habitat disturbance,

---

[8] A true and correct copy of the ACCESS Meeting Agenda April 23, 2024 is attached hereto as Exhibit 7.

[9] A true and correct copy of the "Species Status Assessment Report for the Arkansas River Shiner (*Notropis girardi*) and Peppered Chub (*Machrybopsis tetranema*)" is attached hereto as Exhibit 8.

alteration of stream flow, sediment transport, and degradation of water quality in the Canadian River watershed.

There can be no question the Project constitutes an action that "may affect" the Arkansas River Shiner and its habitat. Yet OTA, USACE, and the relevant federal agencies have not engaged in a meaningful consultation as required under Section 7 of the ESA.

The entirety of the so-called "consultation" amounted to nothing more than OTA's environmental consultant providing FWS with an email including a list of endangered species within the area, and a statement that OTA would not affect them or their habitat, whereupon the consultation was deemed completed.[10] Such a "consultation" does not satisfy the requirements of Section 7. The exchange was cursory, perfunctory, and inadequate. The ESA's consultation requirement is not a mere rubber stamp, check-the-box exercise. It requires a substantive, meaningful assessment of the potential effects of the proposed action on listed species and their habitat. *See* 50 C.F.R. § 402.14.

The consultation was terminated (1) without any investigation into the presence of the Arkansas River Shiner in the action area, (2) without any assessment of the potential effects of the Project on the species, (3) without any analysis of adverse effects, and (4) without any determination whether the endangered species or its habitat would be jeopardized by the Project. Critically, Defendants never performed a Biological

[10] A true and correct copy of this email exchange regarding "OTA ACCESS EWC-28002 (Canadian River Crossing)" between Patricia Echo-Hawk, Kirsten McCullough, Megan Philips-Schaap, ACCESS Oversight, Brandon Lam, and Molly Barletta dated July 2 through July 29 is attached hereto as Exhibit 9.

Assessment, nor did Defendants conduct an Informal Consultation of any substance or initiate a Formal Consultation,[11] and FWS did not issue a Biological Opinion as required under the Endangered Species Act.

It is substantially likely Pike Off will succeed on the merits of its ESA claims.

**E. <u>Section 4(f) of the Federal Transportation Act</u>.**

Section 4(f) of the U.S. Department of Transportation Act (now codified at 49 U.S.C. § 303 and 23 U.S.C. § 138) is the federal law protecting publicly owned parks and recreation areas, wildlife and waterfowl refuges, and historic sites from use in transportation projects.

The Norman Project and Lake Thunderbird (including Lake Thunderbird State Park) are protected under Section 4(f). The Project's route impacts federal title lands, flowage easements, and the conservation, flood, and surcharge pools. Attached hereto as Exhibit 2 is a true and correct copy of the route's segmented impacts on Lake Thunderbird. The attached Exhibit 2 shows both titled lands and flowage easements used for recreational activities will be impacted by the EWC. FHWA is required to perform environmental studies at the intersections of the East-West Connector with Federal Interstate Highways 35, 44, and 40 ***before*** construction starts on the Project. Those studies have not been performed. FHWA must perform a Section 4(f) study to demonstrate there is no "feasible and prudent" alternative to the route selected by OTA that impacts federally protected lands, including the Norman Project and Lake Thunderbird.

---

[11] *Id.*

It is substantially likely Pike Off will succeed on this claim, as FHWA's failure to perform the required Section 4(f) study constitutes a violation of the FTA and infringes upon Pike Off's procedural rights. Additional construction of the EWC should be enjoined until such a study is performed.

## II. PIKE OFF IS AT SERIOUS AND IMMEDIATE RISK OF IRREPARABLE HARM.

As set forth in the supporting Affidavits of Amy Cerato and Tanner Naeher, OTA has commenced construction, and the Project is already causing harm to the very waterways, wetlands, and wildlife habitats that Plaintiff's members use and enjoy.

Should OTA continue construction without first performing the required studies, investigations, and other activities mandated by the CWA, NEPA, ESA, and FTA, Pike Off and its members will be irreparably harmed. Pike Off's procedural rights will be forever lost. The construction of the Project will also irreparably harm Pike Off and its members in a way that is different from the procedural harm suffered because of Defendants' failures—the Project is already materially altering protected waterways in the form of fill and discharge, the rerouting of waterways due to the construction of access roads, building of piers and placement of equipment in Wetlands and inside the OHWM of the Canadian River, and threatening to harm the habitats of protected and endangered species.

Amy Cerato personally participates in mountain biking and other outdoor recreational activities in the Lake Thunderbird area, and the Project's impacts on the interconnected waterways and the surrounding watershed directly threaten the

environmental and recreational qualities she uses and enjoys. *See* Cerato Aff., attached as Exhibit 3 to Complaint.

Tanner Naeher regularly—averaging approximately twice per week—hunts, fishes, engages in wildlife photography, other recreation, and observes wildlife in and around the South Canadian River, Lost Creek, and Lake Thunderbird State Park. His concrete, particularized interests are directly and imminently threatened by the Project. *See* Naeher Aff., attached as Exhibit 2 to Complaint.

In environmental cases, courts have long recognized that "[e]nvironmental injury, by its nature, can seldom be adequately remedied by money damages and is often permanent or at least of long duration, i.e., irreparable." *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 545 (1987). The Tenth Circuit has held that the loss of procedural protections under NEPA and the ESA constitutes irreparable harm because, once construction is complete, the environmental review process becomes a meaningless formality. *See Davis v. Mineta*, 302 F.3d 1104, 1115–16 (10th Cir. 2002); *Forest Guardians v. Johanns*, 450 F.3d 455, 465 (10th Cir. 2006).

These harms are irreparable because they cannot be undone once the Project's construction activities permanently alter the Canadian River, Lost Creek, and the surrounding ecosystem. If the Project is allowed to continue, these harms will increase exponentially as noise pollution, permanent fixtures, and other associated risk factors become permanent and irreversible.

## III. PIKE OFF PREVAILS ON A BALANCING OF HARMS ANALYSIS.

The actions of OTA and the Federal Defendants that are arbitrary, capricious, and not in accordance with law stem from their own conduct and are proved by their own admissions. They include obligations required by statute, regulation, and guidance. Neither OTA nor the Federal Defendants have satisfied their mandatory duties; Pike Off has no such duties.

To the extent Defendants allege any harm to themselves, such harm is self-inflicted. To the extent OTA and the Federal Defendants complain they are harmed by being required to follow laws, regulations, and their own guidance—such harm is of their own making. Pike Off should prevail in any objective balancing of harms to the parties in this action.

OTA has represented to the Court, USACE, and the public that it can construct the Project without impacting WOTUS—yet its own contractors are already working within the undefined OHWM. The balance of harms tips decidedly in Pike Off's favor because OTA will suffer no cognizable harm from being required to comply with the law before proceeding. Any delay in construction results directly from OTA's own decision to commence work without first obtaining the required permits and approvals. The public, conversely, will suffer significant harm if the Project is permitted to continue without the environmental review mandated by Congress.

## IV. THE REQUESTED RELIEF WILL SERVE THE PUBLIC INTEREST.

Pike Off's requested relief enhances and serves the public interest. The relief sought is appropriate for several reasons:

The relief maintains the integrity of the CWA, APA, NEPA, ESA, and FTA processes by requiring Defendants to comply with applicable laws, regulations, and guidelines.

The relief sought—specifically, requiring an Individual Clean Water Act Permit—is in the public's interest because, unlike a Nationwide Permit, it requires enhanced agency review, public notice, and the ability of the public to participate by way of comment.

The public has a strong interest in the protection of the Canadian River, Lake Thunderbird, and the habitats of endangered species, including the Arkansas River Shiner. These waterways provide public drinking water, recreation, aesthetic, and environmental benefits to the surrounding communities.

Only injunctive relief, and not money damages or any other relief at law, will remedy OTA's and the Federal Defendants' violations. Pike Off is entitled to injunctive relief because, if OTA and the Federal Defendants are not required, at this time, to perform the statutorily mandated investigations, reviews, consultations, and permitting, Pike Off and its members lose forever the procedural rights they are assured under the CWA, APA, NEPA, the ESA, and the FTA.

In cases where, such as here, a plaintiff seeks injunctive relief pursuant to NEPA and the ESA, it is common for Courts to impose smaller or nominal bonds in light of the important public interest in the enforcement of these environmental statutes. *See, e.g.*,

*Davis v. Mineta*, 302 F.3d 1104, 1126 (10th Cir. 2002), *abrogated on other ground by Diné Citizens Against Ruining Our Env't v. Haaland*, 59 F.4th 1016 (10th Cir. 2023) ("Ordinarily, where a party is seeking to vindicate the public interest served by NEPA, a minimal bond amount should be considered."); *State of Kan. Ex rel. Stephan v. Adams*, 705 F.2d 1267, 1269 (10th Cir. 1983). A reduced bond is especially justified here because all this Motion seeks to do is require OTA and the Federal Defendants to follow the law, regulations and their own requirements for environmental review. Any harm to Defendants is self-inflicted. Pursuant to Federal Rule of Civil Procedure 65(c), Pike Off respectfully requests that the Court waive the security requirement or impose a nominal bond.

## <u>REQUEST FOR HEARING</u>

Although the Motion seeks immediate relief in the form of a temporary restraining order, Pike Off hereby certifies that it intends to forgo *ex parte* relief, and a traditional hearing on a request for a temporary restraining order. Instead, Pike Off requests this Court consider the Motion's request for a preliminary injunction, and requests a hearing the requested relief be heard within thirty (30) days of filing of the Motion.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff Pike Off OTA, Inc. respectfully requests this Court:

1. Set an immediate hearing with all parties on Plaintiff's request for a temporary restraining order and preliminary injunction, or alternatively, a hearing on the papers for a preliminary injunction within thirty (30) days of filing this Motion;

2. Grant a temporary restraining order and preliminary injunction immediately enjoining OTA from continuing construction of the Project, pending resolution of this action;
3. Grant preliminary and permanent injunctive relief pursuant to 28 U.S.C. § 2202, the APA—or, in the alternative, the Mandamus Act—directing USACE to fulfill its permitting responsibilities under the CWA, including requiring OTA to obtain an Individual Section 404 Permit;
4. Grant a temporary restraining order and preliminary and permanent injunctive relief pursuant to 28 U.S.C. § 2202, the APA—or, in the alternative, the Mandamus Act, or this Court's inherent powers—directing FHWA and OTA to fulfill their obligations to prepare a proper EIS as mandated by NEPA;
5. Grant preliminary and permanent injunctive relief pursuant to 28 U.S.C. § 2202, the APA—or, in the alternative, the Mandamus Act, or this Court's inherent powers—directing USACE and FWS to fulfill their obligations to conduct an appropriate ESA consultation regarding the effect the Project may have on the Arkansas River Shiner, other listed species, and their habitats;
6. Grant preliminary and permanent injunctive relief pursuant to the APA, the All Writs Act, or this Court's inherent powers, prohibiting OTA's continued construction of the Project without first submitting to required permitting procedures and completing all required environmental review;

7. Grant preliminary and permanent injunctive relief preventing OTA from continuing construction of the Project until FHWA completes the required Section 4(f) study;
8. Vacate USACE's verification and approval of OTA's use of NWP-14 for the Project;
9. Waive Federal Rule of Civil Procedure 65(c)'s security requirement for an injunction and restraining order or reduce the amount of the bond to *de minimis*;
10. Award Pike Off its costs of litigation, including reasonable attorneys' fees, to the extent authorized by law; and
11. Grant Pike Off all other relief, at law or in equity, to which it may show itself justly entitled.

Dated: October 30, 2026

**MUNSCH HARDT KOPF & HARR, P.C.**

By: */s/ Frederick W. Addison, III*
Frederick W. Addison, III*
Texas Bar No. 00903350
raddison@munsch.com
Zachary A. Ford*
Texas Bar No. 24116373
zford@munsch.com
Conor P. White*
Texas Bar No. 24125722
cwhite@munsch.com
500 N. Akard Street, Suite 4000
Dallas, Texas 75201
Telephone: (214) 855-7500
Facsimile: (214) 855-7584
* Pro Hac Vice Granted

**CHEEK & FALCONE, PLLC**

By: */s/ Robert E. Norman*
Robert E. Norman
Oklahoma Bar No. 14789
rnorman@cheekfalcone.com
6301 Waterford Blvd., Suite 320
Oklahoma City, Oklahoma 73118
Telephone: (405) 286-9573
Facsimile: (405) 286-9683

*Counsel for Plaintiff Pike Off OTA., Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 30th day of October, 2026, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

Susan R. Davis
Genevieve Geiger
United States Department of Justice
999 18th Street, North Terrace, Suite 600
Denver, CO 80202
Susan.Davis@usdoj.gov
Genevieve.Geiger@usdoj.gov
*Attorney for Federal Defendants*

Phillip G. Waley
Stephen L. Jantzen
Grant M. Lucky
Paula M. Jantzen
RYAN WHALEY, PLLC
400 N. Walnut Ave.
Oklahoma City, OK 73104
pwhaley@ryanwhaley.com
sjantzen@ryanwhaley.com
glucky@ryanwhaley.com
pjantzen@ryanwhaley.com
*Attorney for Defendant OTA*

*/s/ Frederick W. Addison, III*
Frederick W. Addison, III